MATTER OF CHEUNG

In Deportation Proceedings

A-16032302

*Decided by Board March 28, 1979*

(1) In *Matter of S—Y—L—*, 9 I. & N. Dec. 575 (BIA 1962), it was held that an alien who was born on the Chinese Mainland could be ordered deported to Formosa (Taiwan) as the country of nationality under the provisions of section 243(a) of the Immigration and Nationality Act because the United States recognized the Nationalist Government as the legal government of China.

(2) In a Joint Communique on the Establishment of Diplomatic Relations Between the United States and the People's Republic of China issued on December 15, 1978, President Carter announced the recognition by the United States of the government of the People's Republic of China as the sole legal government of China.

(3) As *Matter of S—Y—L—* may no longer be considered valid law, the proceedings are remanded so that the Immigration and Naturalization Service may reformulate its policy regarding the designation of country of deportation in cases involving natives and citizens of China.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant crewman—remained longer than permitted

ON BEHALF OF RESPONDENT:
Jules E. Coven, Esquire
Lebenkoff & Coven, Esquires
One East 42nd Street
New York, New York 10017

ON BEHALF OF SERVICE:
George Masterton
Appellate Trial Attorney

Jay D. Steinberg
Trial Attorney

BY: Milhollan, Chairman; Maniatis, Appleman, Maguire, and Farb, Board Members

In a decision dated August 31, 1977, an immigration judge found the respondent deportable as charged, denied his application for withholding of deportation to the People's Republic of China pursuant to section 243(h) of the Immigration and Nationality Act, 8 U.S.C. 1253(h), as premature in light of the Immigration and Naturalization Service's representation that deportation to the People's Republic would not be attempted,[1] and granted the respondent the privilege of voluntary de-

---

[1] Evidence of record on the respondent's application for section 243(h) relief and on his earlier claim of asylum is confusing. It appears that the respondent has claimed that he

parture in lieu of deportation with an order of deportation to the People's Republic of China in the event of failure to depart voluntarily. Hong Kong was designated as an alternate place of deportation. The Immigration and Naturalization Service appeals on the ground that the immigration judge erred in designating the People's Republic of China as the country of deportation. The record will be remanded to the immigration judge for further consideration.

The respondent is a 26-year-old alien who was born on May 7, 1952, in Foochow, China. He was admitted to the United States as a crewman on August 18, 1975, and was authorized to remain until his vessel had departed, but in no event longer than 29 days. At his August 9, 1977, deportation hearing the respondent conceded deportability as an overstay and was granted voluntary departure. Upon advice of counsel, he then declined to designate a country of deportation, contending simply that he was born on the Chinese Mainland, that he is a citizen of the People's Republic of China, and that under step two of section 243(a) of the Act, the immigration judge is required to order his deportation to the People's Republic.

Under section 243(a) of the Act, if an alien does not designate a country of deportation, deportation shall first be directed to any country of which the alien is a subject national or citizen if such country is willing to accept him into its territory. If that cannot be arranged, deportation may then be directed without necessarily giving any priority or preference because of their order to any one of seven categories of countries. The narrow question raised in this case is what country the respondent must be considered a citizen of for purposes of designating a country of deportation under section 243(a).

On the basis of correspondence from the Department of State concerning the respondent's earlier claim of asylum, (Exhibit 2B) the immigration judge has concluded that the respondent is considered a citizen of the People's Republic of China by the State Department and that accordingly the designation of that country under section 243(a) is appropriate. The Immigration and Naturalization Service disagrees, citing the Board's decision in *Matter of S—Y—L—*, 9 I. & N. Dec. 575 (BIA 1962). After reviewing several court decisions, the Board concluded in *S—Y—L—*, that despite the fact that the alien was born on the Chinese Mainland and had later fled to Hong Kong, he was nevertheless deportable to Formosa (Taiwan) rather than to the People's Republic of China because the United States recognized the Nationalist Govern-

---

fears persecution on the Chinese Mainland and in Hong Kong. Compare Tr. pp. 8–9, with Form I-589 (Request for Asylum in the United States). Resolution of the confusion surrounding these applications is not critical at the present time, however; therefore, we will not address the matter further but will leave the clarification of these claims to the immigration judge in the reopened proceedings.

ment as the legal government of China. See *Rogers* v. *Cheng Fu Sheng*, 280 F.2d 663 (D.C. Cir. 1960), cert. denied 364 U.S. 891 (1960); *United States ex rel. Tom Man* v. *Murff*, 264 F.2d 926 (2 Cir. 1959); *Chi Sheng Liu* v. *Holton*, 297 F.2d 740 (9 Cir. 1961). The Service points out that as late as 1975, the United States Court of Appeals for the Third Circuit reaffirmed the position reached by the Board in *S—Y—L—*. *Cheng* v. *INS*, 521 F.2d 1351 (3 Cir. 1975). While the Service's argument was persuasive when made, very recent events compel the conclusion that *Matter of S—Y—L—* must now be overruled.

In a Joint Communique on the Establishment of Diplomatic Relations Between the United States of America and the People's Republic of China, issued on December 15, 1978, President Jimmy Carter announced the recognition by the United States of the government of the People's Republic of China as the sole legal Government of China and the establishment of diplomatic relations between the two countries, effective January 1, 1979. In enunciating the principles agreed upon by the two parties to the Communique, the President emphasized the fact that the United States now acknowledges Peking's position that there is but one China and that Taiwan is part of China. The exchange of ambassadors and the establishment of embassies occurred on March 1, 1979.

It is apparent in light of the December 15, 1978, Communique that *Matter of S—Y—L—* may no longer be considered valid law. Therefore, we conclude that our most appropriate action at this juncture is to remand the present record to the immigration judge so that the Immigration and Naturalization Service may reformulate its position on this issue. Thereafter, the immigration judge should render a new decision and certify it to us for review.

**ORDER:** The record is remanded to the immigration judge for the action indicated in the foregoing opinion.